DA 14-0087

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 108

STATE OF MONTANA,

          Plaintiff and Appellee,

   v.

MICHAEL PATRICK DUNSMORE,

          Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-12-358, DC-12-359
Honorable Robert B Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Gregory Hood, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant Attorney General, Helena, Montana

          Ed Corrigan, Flathead County Attorney, Allison E. Howard, Deputy County Attorney, Kalispell, Montana

Submitted on Briefs:  January 21, 2015
Decided:  April 21, 2015

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Michael Dunsmore appeals from the judgment of the Eleventh Judicial District Court, Flathead County, that sentenced him to five years in the Montana State Prison (MSP) for failure to register as a sex offender, and a consecutive sentence of ten years in MSP with five years suspended for felony theft.

¶2 The issue on appeal is whether the District Court Judge was disqualified from hearing Dunsmore's case due to personal knowledge of facts in dispute in the sentencing proceeding. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Dunsmore was charged with failure to register as a sex offender and theft, both felonies. Dunsmore entered into a plea agreement with the State that recommended a ten-year sentence to the Department of Corrections (DOC) with all ten years suspended. The presentence investigation (PSI) concluded Dunsmore was not fit for community supervision, however, and accordingly recommended a net sentence of ten years in MSP with five years suspended.

¶4 Judge Robert Allison presided over the case. Prior to becoming a district court judge, Allison represented Dunsmore's daughter in a youth in need of care case in which Dunsmore was accused of incest with the daughter Allison represented. At the same time that he was presiding over Dunsmore's criminal charges, Judge Allison was also presiding over a family law matter between Dunsmore and Dunsmore's ex-wife, Jody Radabah.

¶5 Judge Allison conducted sentencing a little over a year after the charges were filed. At sentencing, three witnesses testified on behalf of Dunsmore. All three indicated that Dunsmore had made significant improvement in addressing the problems underlying his crimes over the 13 months between the time Dunsmore was charged with the two felonies and the time of the sentencing hearing. Only one witness gave adverse testimony, Dunsmore's ex-wife, Radabah. Radabah testified that Dunsmore attempted to make plans with their son to go hunting while the two felonies were pending and Dunsmore was prohibited from possessing a firearm. Radabah further testified that Dunsmore had another person pawn one of his rifles and had their son retrieve the rifle from the pawn shop because Dunsmore was not permitted to possess a firearm. Radabah also expressed concerns about Dunsmore's parenting.

¶6 At the conclusion of testimony, the State recommended a net sentence of ten years commitment to the DOC with all ten years suspended and asked that Dunsmore be designated a level 1 sex offender as recommended in his psychosexual evaluation. Dunsmore's counsel emphasized the significant strides Dunsmore had made in addressing his personal problems, and pointed out that he was holding a job and paying child support. Counsel further pointed out that Dunsmore's underlying sexual offense was twenty years old, Dunsmore had not been charged with any sexual offenses since, and Dunsmore was designated a level 1 offender (meaning he was considered the lowest risk for re-offense). Addressing Radabah's accusation that Dunsmore possessed guns, counsel argued that Dunsmore could legally possess guns but that there was some

3

confusion on the matter between state and federal law.[1]  Judge Allison did not give Dunsmore the opportunity to make a statement on his own behalf, as required by § 46-18-115(3), MCA, and Montana Code of Judicial Conduct Rule 2.6.

¶7    At the conclusion of the parties' arguments, Judge Allison explained the factors he was taking into consideration for purposes of determining the appropriate sentence. Judge Allison first expressed strong concern about Dunsmore possessing guns after pleading guilty to the two felony charges in this case.  Dunsmore attempted to speak up at that point, but Judge Allison prevented him from doing so.  Judge Allison explained that he believed the gun possession showed that Dunsmore acted as though the law applied to him only when it suited him.  Judge Allison further noted that Dunsmore had been out of prison for less than a year when he committed the two felonies at issue, and that he had six prior felony convictions.  Based on those facts, Judge Allison sentenced Dunsmore to a net sentence of fifteen years in MSP, with five years suspended.

¶8    Between the time the District Court made its oral pronouncement of judgment and the time it entered its written judgment and sentence, Dunsmore filed a petition for a writ of habeas corpus in this Court.  In his petition, Dunsmore made several claims, including that his attorney was ineffective because she failed to move to have Judge Allison recuse himself.  Dunsmore revealed that, prior to sentencing, he told his attorney about Judge Allison's prior representation of Dunsmore's daughter in the abuse and neglect case (he

---

[1]  Presumably, counsel was referring to *Van Der Hule v. Holder*, 759 F.3d 1043 (9th Cir. 2014), which was then pending in the Ninth Circuit after the Montana Federal District Court held that convicted felons in Montana could not possess firearms under federal law, even though permitted to do so under state law.

4

also claimed Judge Allison was friends with Radabah's new husband who was trying to adopt Dunsmore's and Radabah's chidren), but his attorney did not move for recusal. We dismissed the petition, holding that Dunsmore's claims were better addressed on direct appeal or in a postconviction relief proceeding. Order, *Dunsmore v. Kirkegard*, (Mont. Jan. 14, 2014) (OP 13-0844).

¶9 Dunsmore appeals the District Court's judgment and sentence.

## STANDARD OF REVIEW

¶10 It appears we have never determined the appropriate standard of review for the question of whether a judge should have recused[2] himself. In general, interpretation of laws such as constitutional and statutory provisions, are matters of law we review de novo. *Reichert v. State*, 2012 MT 111, ¶ 19, 365 Mont. 92, 278 P.3d 455. Since a judge's disqualification decision is directed by the Montana Code of Judicial Conduct, the decision relies on an accurate interpretation of the Code's provisions. Moreover, as other courts have recognized, an appellate court's inquiry into disqualification requires an objective examination of the circumstances surrounding a request for recusal. *See, e.g.*, *Powell v. Anderson*, 660 N.W.2d 107, 116 (Minn. 2003) (adopting a de novo standard of review and noting that the objective inquiry required in disqualification claims "displaces any deference that might otherwise be paid to the challenged judge's decision to not recuse"). For those reasons, we will review a judge's

---

[2] The terms "recuse" and "disqualify" are used interchangeably throughout case law on the issue.

5

disqualification decision de novo, determining whether the lower court's decision not to recuse was correct under the Montana Code of Judicial Conduct.

## DISCUSSION

¶11 Dunsmore argues that Judge Allison should have recused himself, and that his failure to do so violated Dunsmore's due process rights. It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process. *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 876, 129 S. Ct. 2252, 2259 (2009). The requirement of a fair trial in a fair tribunal includes the requirement that any judge who is biased or partial with regard to a particular matter or party be disqualified from hearing the case. As the U.S. Supreme Court has recognized, however, "most matters relating to judicial disqualification [do] not rise to a constitutional level." *FTC v. Cement Institute*, 333 U.S. 683, 702, 68 S. Ct. 793, 804 (1948). Most states, by adopting the ABA's Model Code of Judicial Conduct, have instituted more rigorous standards for judicial disqualification than those required by due process. *Caperton*, 556 U.S. at 888–89, 129 S. Ct. at 2266–67.

¶12 Montana followed this path when it adopted the ABA Model Code as the 2008 Montana Code of Judicial Conduct. Hence, disqualification questions in the Montana state courts are governed by the Montana Code of Judicial Conduct. *Reichert v. State*, 2012 MT 111, ¶ 31, 365 Mont. 92, 278 P.3d 455. Since the Montana Code of Judicial Conduct provides more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution. *Reichert*, ¶ 31 (*quoting Caperton*, 556 U.S. at 890, 129 S. Ct. at 2267).

6

¶13 Rule 2.12 of the Montana Code of Judicial Conduct states,

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
> (1) The judge has a personal bias or prejudice concerning a party . . . or personal knowledge of facts that are in dispute in the proceeding.

M. C. Jud. Cond., Rule 2.12(A)(1). When the judge's personal knowledge stems from prior representation as an attorney, Rule 2.12(A)(1) operates in conjunction with Rule 2.12(A)(5)(a), which requires recusal when the judge "served as a lawyer in the matter in controversy." *See Bullman v. State*, 2014 MT 78, ¶¶ 16–17, 374 Mont. 323, 321 P.3d 121 (citing Rules 2.12(A)(1) and (A)(5)(a) and holding that "the plain language of Rule 2.12 clearly requires recusal when the judge has personal knowledge of disputed facts stemming from his previous representation of a client in a separate and related matter").

¶14 Dunsmore argues that Judge Allison's prior representation of Dunsmore's daughter in an abuse and neglect proceeding in which Dunsmore was accused of incest gave Judge Allison personal knowledge of facts in dispute in Dunsmore's case. More particularly, Dunsmore argues that allegations of sexual impropriety with his daughter were information regarding his character, and questions regarding his character were facts in dispute in his sentencing hearing. Dunsmore also argues that Radabah's testimony about Dunsmore's parenting put his parenting at issue in the sentencing hearing, and Judge Allison's prior representation of Dunsmore's daughter gave him personal knowledge of facts regarding Dunsmore's parenting.

7

¶15 The State counters that Dunsmore and his attorney were aware of Judge Allison's representation of Dunsmore's daughter in the abuse and neglect case but chose not to move for recusal. The State argues that Dunsmore should be barred from raising the issue on appeal when he had the opportunity to raise it below and made what it characterizes as a tactical decision not to move for recusal.

¶16 The State's argument has merit. We adopted the ABA Model Code of Judicial Conduct in 2008 in part because it would allow us to consider a well-developed body of case law from other jurisdictions. Order, *In the Matter of the 2008 Montana Code of Judicial Conduct*, (Dec. 12, 2008) (Mont. AF 08-0203). The language of Rule 2.12 is silent on the issue of when a claim for disqualification must be raised. However, a number of jurisdictions interpret the provision in the Model Code of Judicial Conduct at issue here[3] as requiring a party to bring a motion to recuse within a reasonable time after the party acquires knowledge of a potential basis for recusal. For example, the majority of federal appellate courts, including the First, Second, Third, Fourth, Fifth, Eighth, Ninth, Tenth, Eleventh, and Federal Circuits have found that timeliness is a requirement when recusal is sought under the federal analogue of Montana's Rule 2.12, which is codified in statute at 28 U.S.C. § 455. *See Kolon Indus. v. E.I. du Pont de Nemours & Co.*, 846 F. Supp. 2d 515, 522 (E.D. Va. 2012) (collecting cases). State courts have similarly held that a recusal must be sought within a reasonable time of learning of facts that would form the basis of a motion to disqualify. *See, e.g., State v. Jacobson*,

---

[3] Montana Code of Judicial Conduct Rule 2.12(A) is a verbatim adoption of ABA Model Code of Judicial Conduct, Rule 2.11(A).

747 N.W.2d 481, 483 (N.D. 2008) ("[W]hen a party has knowledge of information relevant to disqualification and waits until the final decision of the judge to object to the judge's involvement in the case, the objection is untimely and results in a waiver."); *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) ("The failure to seek recusal in a timely manner may result in the waiver of any complaint concerning the judge's impartiality."); *Tierney v. Four H Land Co. Ltd. P'ship*, 798 N.W.2d 586, 592 (Neb. 2011) ("A party is said to have waived his or her right to obtain a judge's disqualification when the alleged basis for the disqualification has been known to the party for some time, but the objection is raised well after the judge has participated in the proceedings.").

¶17 Courts have long recognized the timeliness requirement in the particular context of sentencing. "A defendant cannot take his chances with a judge and then, if he thinks that the sentence is too severe, secure a disqualification and a hearing before another judge." *Taylor v. United States*, 179 F.2d 640, 642 (9th Cir. 1950); *accord United States v. Branco*, 798 F.2d 1302, 1304 (9th Cir. 1986) (defendant could not wait "to file his motion to disqualify until after sentencing had been completed"); *see also In re United Shoe Machinery Corp.*, 276 F.2d 77, 79 (1st Cir. 1960) ("One of the reasons for requiring promptness in filing [recusal motions] is that a party knowing of a ground for requesting disqualification, cannot be permitted to wait and decide whether he likes the treatment that he receives."). Moreover, there are persuasive reasons for adopting a timeliness requirement. The timeliness requirement prevents the concealment of an ethical issue in order to create a strategic advantage and prevents the waste of judicial resources and prejudice to the non-movants. *See In re Owens Corning*, 305 B.R. 175, 194, 2004 U.S.

9

Dist. LEXIS 6795 (D. Del. 2004) (discussing purpose of the timeliness rule and listing cases).

¶18 We find this reasoning persuasive and, hence, adopt the timeliness requirement. A claim for disqualification of a judge that can be waived by the parties under Rule 2.12(C) is considered waived if a party does not raise the issue within a reasonable amount of time after the party acquires knowledge of a potential basis for disqualification. The Montana Code of Judicial Conduct, however, does not allow the parties to waive disqualification for bias or prejudice, and thus the timeliness requirement does not apply when a disqualification claim is based on bias or prejudice. *See* M. C. Jud. Cond. 2.12(C) (explaining that disqualification may be waived by the parties unless disqualification is for bias or prejudice).

¶19 We note that Dunsmore argues Judge Allison's failure to offer Dunsmore the opportunity to speak at sentencing, combined with the fact that the sentence imposed was greater than both the plea agreement and PSI recommended, "could be construed as evidence of bias." We do not interpret this—nor does it appear to be intended—as a claim of actual bias or prejudice. Therefore, Dunsmore's disqualification claim does not fall within the bias or prejudice exception to the timeliness requirement. Dunsmore argues only that Judge Allison was required to recuse himself because of his knowledge of facts in controversy acquired from prior representation of a client in a separate but related matter. Such a claim is subject to the timeliness requirement. Dunsmore's counsel made an apparent tactical decision not to seek Judge Allison's disqualification. Thus, Dunsmore waived his claim for disqualification of Judge Allison.

## CONCLUSION

¶20 A claim for disqualification of a judge must be brought within a reasonable time after the moving party learns the facts forming the basis for a claim that the judge should be disqualified. Dunsmore's counsel knew of the factual basis for Dunsmore's disqualification claim before sentencing, but did not raise disqualification. Thus, Dunsmore's claim was waived, and we cannot grant him relief on the basis that Judge Allison should have been disqualified. Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER