FILED

08/23/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0141

DA 15-0141

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 213

IN THE MATTER OF THE GUARDIANSHIP
AND CONSERVATORSHIP OF,

A.M.M.,

      An Incapacitated Person.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause Nos. DG 14-2 and DG 14-3
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Genet McCann, Avalon Law, LLC, Big Sky, Montana

      For Appellee:

          Tammy Wyatt-Shaw, Marcel A. Quinn, Hammer, Quinn & Shaw, PLLC, Kalispell, Montana

          Clinton, Fischer, Casey Emerson, Fischer Law Offices, P.C., Polson, Montana
          (*Attorneys for Appellee/Guardian Emerson*)

          Douglas J. Wold, Wold Law Firm, P.C., Polson, Montana
          (*Attorney for Co-Conservators*)

                     Submitted on Briefs:  June 1, 2016
                               Decided:  August 23, 2016

Filed:

_____
                       Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Timothy McCann and Genet McCann appeal from three groups of orders entered by the Twentieth Judicial District Court, Lake County, in its efforts to oversee the guardianship and conservatorship of their elderly mother, A.M.M., including the preliminary injunction, Rule 11 sanctions, and request for recusal.[1] This is Timothy's second appeal to this Court in this matter. Appellees Paul McCann Jr. and Polson attorney Douglas J. Wold (together, Co-Conservators) and Casey Emerson (Guardian) submitted briefs in response. Genet, an attorney, represents herself and Timothy on appeal. Wold represents himself and Paul Jr. on appeal. We affirm.

¶2 Timothy and Genet raise twelve issues on appeal. We find the following three issues dispositive and restate them as:

1. *Whether the District Court abused its discretion by granting Guardian's motion for a preliminary injunction.*

2. *Whether the District Court erred by denying Genet's motion to recuse.*

3. *Whether the District Court erred by sanctioning Genet.*

---

[1] Timothy and Genet fail to develop several arguments, especially relating to the first annual accounting, or cite relevant, favorable authority to support them. Parties must present a reasoned argument to advance their positions, supported by citations to appropriate authority. M. R. App. P. 12(1)(g). "When a party fails to do so, our caselaw is well-settled. We will not consider unsupported issues or arguments." *Griffith v. Butte Sch. Dist. No. 1*, 2010 MT 246, ¶ 42, 358 Mont. 193, 244 P.3d 321 (citation omitted). We decline to consider Timothy and Genet's undeveloped, unsupported arguments.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3      Born in 1922, A.M.M. is the widowed mother of eight adult children:  William, Thomas, Paul Jr., Miriam, Genet, Timothy, Kathleen, and Sheila.[2]  On March 14, 2014, the District Court concluded A.M.M. is an incapacitated person as defined by § 72-5-101(1), MCA.  To protect A.M.M. and her substantial assets, the court appointed Polson attorney Casey Emerson as A.M.M.'s guardian; and son Paul Jr., son Timothy, and Wold as A.M.M.'s joint conservators.  On October 7, 2014, the court granted Timothy's voluntary withdrawal as Co-Conservator.

¶4      On January 2, 2015, Guardian filed a motion for preliminary injunction and temporary restraining order asking the District Court to enjoin Timothy and Genet from engaging in certain activities Guardian believed were detrimental to A.M.M.'s health.  On January 7, 2015, the court held a hearing on Guardian's motion.  The morning of the hearing, Genet acted as Timothy's attorney by filing a pleading on his behalf.  However, twelve minutes before the hearing, Timothy filed a "Notice of Withdrawal of Attorney and My Appearance Pro Se."  At the hearing, the court denied Genet leave to withdraw as Timothy's attorney due to Genet's failure to comply with the rules governing withdrawals and because "[t]his is the latest in a pattern of conduct in which Tim has attempted to frustrate and delay scheduled hearings, which began with the earliest hearings in this case."  Genet did not appear at the hearing.  Timothy was physically

---

[2]  Additional factual background can be found in Timothy's first appeal to this Court, *In re Guardianship and Conservatorship of A.M.M.*, 2015 MT 250, 380 Mont. 451, 356 P.3d 474 (*A.M.M. I*).

present, but the court denied him leave to appear pro se because he had counsel of record, Genet.

¶5 On February 4, 2015, the District Court issued findings of fact, conclusions of law, and a preliminary injunction. The court found A.M.M. "suffers from dementia and other health conditions which are exacerbated by stress, anxiety, and sleep interference" and, according to her treating physician, "[a]nything that contributes to a higher stress and anxiety level is detrimental to her physical, mental and emotional well-being."

¶6 The District Court found Timothy and Genet had engaged in activities negatively impacting A.M.M., her caregivers, and Guardian. For example, Timothy and Genet "strongly objected" to a trip A.M.M. planned to take during winter to visit her daughter Sheila where she lived in California. "Although they would apparently not object to [A.M.M.] going to Arizona or Hawaii with Tim accompanying her, they contended this trip to California would be detrimental to her health." They tried to prevent her from going. Evidence in the record showed that they "loudly read the newspaper, within [A.M.M.'s] hearing, about the Air Asia plane crash," talked about earthquakes in California, and took A.M.M. to a new doctor and "coached her to be 'strong' and tell this doctor that she did not want to go." Timothy and Genet "have disparaged and insulted" A.M.M.'s caregivers, called one an obscene name, accused others of stealing towels or glasses, and created an "unpleasant and difficult work environment for these caregivers." Timothy and Genet "have interfered with and ignored the authority of the Guardian" and "have been inappropriately aggressive and accusatory toward the Guardian." The court found further:

Two of [A.M.M.'s] children, Tim McCann and Genet McCann, during the pendency of this action, have acted in ways that caused significant stress and anxiety to [A.M.M.]. This situation has continued for a year. It appears that Tim and Genet love their mother, but do not grasp that their actions are harming her. Both are intelligent, educated people. However, despite repeated and clear attempts to communicate this reality to them (that their actions are harming their mother's health), they appear to either be unable to understand this, or unable or unwilling to modify their behavior. Any judge would be reluctant to restrict adult children's time with their mother, but this situation should not be allowed to continue.

¶7 The District Court's preliminary injunction restricted Timothy and Genet's time with A.M.M., but allowed them to attend church with A.M.M. and visit her, at her home, between 9 a.m. and 12 p.m., if she was awake and either a caregiver or Guardian was present. The injunction stated that the restrictions did not apply to family gatherings where other siblings or relatives were present. It also provided that either Timothy or Genet could request a modification of its terms. The preliminary injunction required Timothy and Genet to return their keys to A.M.M.'s home. It also enjoined them from discussing, either with or in front of A.M.M., "financial matters, legal proceedings, feuds or difficulties between siblings, or any other matters which will foreseeably cause additional stress and anxiety for [A.M.M.]" or "make derogatory remarks within [A.M.M.'s] hearing, about the Guardian, Conservators, caregivers, or any relatives" and "[t]hey shall not speak with [A.M.M.] about this Preliminary Injunction."

¶8 On February 13, 2015, Co-Conservators filed a motion for Rule 11 sanctions against Genet, but later withdrew it. On March 2, 2015, Genet filed a request for Rule 11 sanctions against Wold and a request that Judge Manley recuse himself. Genet argued she should not be sanctioned, but that Wold should be sanctioned for filing "frivolous

5

Motions," and accused Judge Manley of "bias," being in an "unethical association" with Wold, and employing Wold's daughter as his judicial assistant. Both "requests" were denied. On May 22, 2015, Genet filed a motion for recusal wherein she reiterated her earlier arguments, accusation of bias, and added felonious accusations against Guardian, alleging she had committed "criminal tampering with a subpoenaed witness" and "engaging in official criminal misconduct."

¶9 In its June 24, 2015, order, the District Court noted that during the hearing on May 22, 2015, Genet was "contrite and apologetic for her words and tone used in her pleadings." The court noted that Genet cited her lack of legal experience for her conduct and appeared to be sincere. "However, three minutes before the hearing began, [Genet] filed a 22 page motion for recusal and brief. This was similar to previous motions for recusal filed herein, except perhaps even more vitriolic." Genet "filed this offensive pleading *pro se*, even though she was represented by two attorneys who were, in fact, personally present in the courtroom across the hall from the clerk's office." The court concluded the motion's "allegations of misconduct against Mr. Wold and the Court are without factual or legal basis, and were made without inquiry reasonable under the circumstances." The court noted "[t]he juxtaposition of [Genet's] oral contrition and written vitriol is unusual, to say the least, and raises serious question[s about] whether she is capable of conforming her behavior to acceptable standards of practice and civility." Genet had formed a "pattern of frivolous, incompetent, offensive and unfounded allegations made against numerous attorneys and others in past pleadings." The District Court found her in violation of Rule 11 and imposed sanctions. Genet was required to

pay reasonable attorney fees and costs incurred by Guardian and Co-conservators in connection with the Rule 11 matter and prohibited from filing "any other pleadings in this case, unless such pleading is also signed by a licensed, practicing Montana lawyer." Genet and Timothy appeal, asserting various constitutional violations and other forms of prejudice suffered at the District Court.

## STANDARDS OF REVIEW

¶10 A district court has broad discretion to grant or deny a preliminary injunction and we review the court's decision for an abuse of that discretion. *Cole v. St. James Healthcare*, 2008 MT 453, ¶ 9, 348 Mont. 68, 199 P.3d 810 (citations omitted). We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law for correctness. *In re Charles M. Bair Family Trust*, 2008 MT 144, ¶ 28, 343 Mont. 138, 183 P.3d 61 (citations omitted). "[W]e will review a judge's disqualification decision de novo, determining whether the lower court's decision not to recuse was correct under the Montana Code of Judicial Conduct." *State v. Dunsmore*, 2015 MT 108, ¶ 10, 378 Mont. 514, 347 P.3d 1220. "[W]e review de novo the district court's determination that the pleading, motion or other paper violates Rule 11." *Byrum v. Andren*, 2007 MT 107, ¶ 19, 337 Mont. 167, 159 P.3d 1062.

## DISCUSSION

¶11 *1. Whether the District Court abused its discretion by granting Guardian's motion for a preliminary injunction.*

¶12 Timothy and Genet argue the District Court abused its discretion by granting Guardian's motion for a preliminary injunction. First, Timothy and Genet argue the

7

preliminary injunction violated several of A.M.M.'s constitutional rights. However, we have already held that Timothy lacks standing and cannot "assert A.M.M.'s constitutional due-process rights." *A.M.M. I*, ¶ 28. Likewise, Timothy lacks standing to assert any new violations of A.M.M.'s constitutional rights and, for these same reasons, Genet also lacks standing. *See A.M.M. I*, ¶¶ 24-29. Timothy and Genet lack standing to present arguments premised upon A.M.M.'s constitutional rights.

¶13 Next, Timothy and Genet argue the District Court violated each of their constitutional rights to due process and equal protection by granting the preliminary injunction. However, Timothy and Genet do not advance any authority for their proposition that the constitutional rights of adult children are implicated in the guardianship and conservatorship proceedings of an incapacitated parent. The focus of these proceedings is on A.M.M. and her well-being. "Guardianship for an incapacitated person may be used only as is necessary to promote and protect the well-being of the person." Section 72-5-306, MCA. We have stated that "a petition to appoint a guardian is not an adversarial proceeding, but rather a proceeding to promote the best interests of the person for whom guardianship is sought." *In re Estate of Bayers*, 1999 MT 154, ¶ 14, 295 Mont. 89, 983 P.2d 339 (citation omitted). Timothy and Genet have not demonstrated that they have standing to present arguments premised on a violation of their own constitutional rights.

¶14 Timothy and Genet argue § 27-19-303, MCA, "ensures a respondent to an injunction order is afforded an opportunity to be heard." They argue Timothy was denied

that opportunity at the show cause hearing when the District Court denied Genet leave to withdraw as Timothy's attorney and denied Timothy leave to appear pro se.

¶15   "An injunction is an order requiring a person to refrain from a particular act." Section 27-19-101, MCA.  Before granting an injunction, a hearing is required to show cause "why the injunction should not be granted."  Section 27-19-301(2), MCA.  "The injunction order may be granted after the hearing" and at the hearing "each party may present affidavits or oral testimony."  Section 27-19-303(1), (2), MCA.  "The attorney in an action or special proceeding may be changed at any time before or after judgment" upon consent of both client and attorney or by court order "upon the application of either client or attorney, after notice from one to the other."  Section 37-61-403, MCA. Additionally, the Montana Uniform District Court Rules require that an attorney who withdraws from representing a party to a civil proceeding to "inform the court and all other parties of the full name and address of his/her client."  M.U.D.C.R. 10(a).  Then, the opposing party must give the newly unrepresented party notice that the party is required to appoint new counsel within twenty one days or appear pro se in further proceedings.   M.U.D.C.R. 10(b).   This Court has stated that we require "strict compliance" with the requirements of Rule 10.  *Stewart v. Rice*, 2013 MT 55, ¶ 32, 369, Mont. 203, 296 P.3d 1174 (citation omitted).

¶16   The District Court held a show cause hearing on January 7, 2015.  This hearing provided Timothy with an opportunity to show cause "why the injunction should not be granted."  However, Timothy initiated a change in representation twelve minutes prior to the beginning of the hearing.  Genet acted as Timothy's attorney, by filing a pleading on

9

his behalf earlier that day, but did not appear at the hearing. There was no indication Genet was unavailable to represent Timothy at the hearing. The District Court denied Genet leave to withdraw and Timothy leave to proceed pro se for their failure to comply with § 37-61-403, MCA, because doing so would cause delay, and the court recognized that Timothy had a pattern of "frustrat[ing] and delay[ing] scheduled hearings."

¶17 Timothy's attempt to change representation did not meet the requirements of § 37-61-403, MCA, because his "Notice of Withdrawal of Attorney and My Appearance Pro Se" did not indicate whether Genet had either consented to her withdrawal or been given notice from Timothy. In its order denying Genet leave to withdraw, the District Court stated, "Because of [M.U.D.C.R. 10], the last-minute attempt (or last 12 minute attempt), to change from a represented party to a *pro se* party would have required immediately vacating the hearing, and the represented parties to give [Timothy] notice of all the information required by Rule 10(b), and a delay of at least 21 days before the hearing could be held pursuant to Rule 10(d)." Reviewing the record prior to the show cause hearing, Timothy was initially represented by the law firm Datsopoulos, MacDonald, and Lind, who then withdrew; Genet, who then withdrew; Wendell B. Dunn, who then withdrew; and then again by Genet. In between being represented by counsel, Timothy proceeded pro se. The District Court could have denied Genet leave to withdraw and Timothy leave to appear pro se for any one of the reasons upon which it relied and did not abuse its discretion by denying both motions.

¶18 Evidence showed Timothy and Genet's behavior was inappropriate, disruptive, and not in A.M.M.'s best interests. The preliminary injunction's restrictions were

10

reasonable and furthered A.M.M.'s best interests while still allowing Timothy and Genet to maintain a relationship with A.M.M. The District Court followed proper procedures by holding a hearing and providing an opportunity for Timothy and Genet to show why it should not grant Guardian's request for a preliminary injunction. The District Court did not abuse its discretion by granting the preliminary injunction.

¶19 *2. Whether the District Court erred by denying Genet's motion to recuse.*

¶20 On March 2, 2015, Genet requested Judge Manley recuse himself.[3] Responding to her request, the District Court stated "Genet has not filed a motion for substitution pursuant to MCA 3-1-804, or a motion for disqualification for cause with affidavit of prejudice pursuant to MCA 3-1-805." The court denied Genet's request. On May 22, 2015, hours before the hearing set for Rule 11 and contempt proceedings, Genet filed a "Motion for Recusal from DG 14-2; or in the alternative, Motion for Recusal for Rule 11 Contempt Proceedings; Brief in Support."

¶21 A party in a civil action may move to disqualify a judge. Preliminarily, we must note that the issue of whether Genet, daughter of the protected person, is a party to these proceedings has not been raised by any of the litigants and is therefore not before us. Further, it is not necessary to decide whether Genet is a "party" to these proceedings as we resolve the issue based upon the District Court's reasoning. The procedure for

---

[3] It is unclear in many pleadings throughout the District Court record and in the briefs on appeal, whether Genet is representing herself, Timothy, or both herself and Timothy. The District Court record shows that Genet argued both that she was not a party to the proceedings and, thus, the District Court lacked jurisdiction over her. Other times she insisted she was a party and her constitutional rights were implicated. Genet's motion to recuse was, apparently, filed only on her own behalf.

11

disqualification is set forth in § 3-1-805, MCA. "Whenever a party to any proceeding in any court shall file an affidavit alleging facts showing personal bias or prejudice of the presiding judge, such judge shall proceed no further in the cause." Section 3-1-805(1), MCA. The affidavit must be filed more than 30 days before the date set for hearing or trial, must be accompanied by a certificate that it is made in good faith, and, if the affidavit is not proper in form or fails to allege facts showing personal bias or prejudice, the motion may be set aside as void. Section 3-1-805(1)(a)-(c), MCA. A judge must not sit or act in any action or proceeding to which he is a party, interested, related to a party, related to an attorney, or related to any attorney or member of a firm of attorneys of record for a party. Section 3-1-803, MCA.

¶22 Genet failed to file an affidavit alleging bias or prejudice. Instead, on appeal, Genet argues Judge Manley erred by not recusing himself because he violated Montana Rules of Judicial Conduct 2.12 and 2.13 and violated her right to due process. Rule 2.12 governs disqualification. "[D]isqualification questions in the Montana state courts are governed by the Montana Code of Judicial Conduct" and, because the Code "provides more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution." *Dunsmore*, ¶ 12 (citations omitted). "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned," including if the judge has a personal bias or personal knowledge of the facts in dispute. M. C. Jud. Cond. Rule 2.12(A). Rule 2.13 governs supervisory duties. "A judge shall require court staff, court officials, and others

subject to the judge's direction and control to act in a manner consistent with the judge's obligations under this Code." M. C. Jud. Cond. Rule 2.13.

¶23 Genet argues Judge Manley violated Rule 2.12 because a prior association with Wold created a bias in Wold's favor and Rule 2.13 because he employed Wold's daughter as his judicial assistant while she also worked for Wold. The District Court concluded that:

> The allegations of misconduct against Mr. Wold and the Court are without factual or legal basis, and were made without inquiry reasonable under the circumstances. [Genet] thereby violated Rule 11. [Genet] offered no evidence to prove the allegations of misconduct were true, or even that she had a reasonable basis for repeatedly making those same allegations which had been made in the past, and shown to be without merit. Nor did she offer evidence of reasonable inquiry.

The District Court proceeded to sanction Genet for her behavior. We agree with the District Court that there is no evidence in the record supporting Genet's allegation that Judge Manley violated either Rule 2.12 or Rule 2.13. Genet did not file an affidavit alleging bias or prejudice or otherwise comply with § 3-1-805, MCA. Section 3-1-805, MCA, sets forth a procedure which must be followed when a party believes the presiding judge cannot be fair and impartial in the proceeding. The procedure is designed to provide due process to the aggrieved litigant in a proceeding in which the judge is presumptively fair and impartial. The requirement of an affidavit is therefore not dispensable. We conclude the District Court did not err by denying Genet's motion to recuse.

¶24    *3. Whether the District Court erred by sanctioning Genet.*

¶25    Genet argues the District Court erred by sanctioning her for violating Rule 11 because it was "fundamentally unfair" and her motion to recuse was "well grounded in fact and law." "By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and "(3) the factual contentions have evidentiary support." M. R. Civ. P. 11(b). "If after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney . . . responsible for the violation." M. R. Civ. P. 11(c)(1). The court may do this on motion or its own initiative. M. R. Civ. P. 11(c)(2)-(3).

¶26    It is apparent from the record that the District Court grew increasingly burdened and frustrated by Timothy and Genet's behavior. The court warned the parties well before eventually finding Genet in violation of Rule 11 and sanctioning her. The court demonstrated leniency and tolerance, while also urging Timothy and Genet to retain competent counsel. In an order issued February 4, 2015, the court summarized some of the burdens Genet and Timothy's tactics were placing on it at the time:

> January 7, 2015, Genet McCann caused to be filed a Rule 12(b)(2) Motion to Dismiss Application for TRO and Preliminary Injunction. Both appear to be copies, not originals. Neither contained a Certificate of Service. She apparently intended to file these on her own behalf, as a party, although at

14

the time she was both denying she is a party, and counsel of record for Timothy McCann, who is a party and her brother.

Thereafter, on January 12, 2015, Timothy McCann, who by this time was contending he was pro se, filed an "Amended Certificate of Service to [Genet's] Motion to Quash Application for TRO and Preliminary Injunction" (though not for Genet's Motion to Dismiss). He may have believed he was acting as Genet's attorney.

On January 13, 2015, Genet filed an "Amended Certificate of Service" for her Rule 12(b) Motion to Dismiss. She did not file an Amended Certificate of Service relating to her defective Motion to Quash. Perhaps she believed Tim had done so as *her* attorney the day before.

Simultaneously with these filings, Genet and Tim were filing defective and amended pleadings, (some copies and some originals) for the apparent purpose of asking leave for Genet to withdraw as Tim's attorney (without actually asking for leave).

This frivolous, frothful filing practice is not new. It is a pattern. The Court and parties have had to spend inordinate time on this. [A.M.M.'s] estate is incurring inordinate legal expenses as a result. Tim and Genet have declined to get competent counsel, in favor of this kind of practice.

The court sanctioned Genet on June 24, 2015, based on her May 22, 2015, motion to recuse. In that pleading, Genet repeated accusations that Wold was filing frivolous motions, Judge Manley was biased, and added a new accusation that Guardian committed crimes without providing evidence or providing evidence that she had conducted a reasonable inquiry. The court concluded Genet violated Rule 11 for these reasons. Its conclusion is not clearly erroneous. The District Court did not err by sanctioning Genet.

**CONCLUSION**

¶27 The District Court did not abuse its discretion by granting Guardian's motion for a preliminary injunction and did not err by approving the Co-Conservator's first annual accounting, by denying Genet's motion to recuse, or by sanctioning Genet.

15

¶28    Affirmed.


                                        /S/ LAURIE McKINNON


We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE