DA 13-0340



FILED

March 25 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 78

ERIN CLYDE BULLMAN,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-10-730(B)
Honorable Robert B Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Erin Clyde Bullman, self-represented, Deer Lodge, Montana

      For Appellee:

         Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena Montana

         Ed Corrigan, Flathead County Attorney, Kalispell, Montana

Submitted on Briefs:  February 19, 2014
Decided:  March 25, 2014

Filed:

_____
                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 The following issues are presented for review:

> 1. *Did the District Court err by denying Bullman the right to raise additional claims in his Amended PCR Petition?*
>
> 2. *Did Judge Curtis have an impermissible conflict of interest based on her ruling in a previous civil case involving Bullman?*
>
> 3. *Did Judge Allison have an impermissible conflict of interest based on his previous representation of Bullman's wife in a divorce proceeding?*
>
> 4. *Was Bullman denied the right to effective assistance of trial counsel?*
>
> 5. *Was the fairness of Bullman's trial compromised by the prosecutor's misconduct?*

## BACKGROUND

¶2 In December 2006, Erin Clyde Bullman was tried by a jury on the charges of incest and sexual assault against his step-daughter, J.T. The Honorable Katherine Curtis presided over that trial. After the prosecution rested at trial, Bullman moved for a directed verdict on the incest charge because the State failed to prove that Bullman had been married to M.T., the mother of J.T. The District Court denied the motion, relying on M.T.'s testimony describing their relationship, that she had filed tax returns as married, and that she had legally dissolved the marriage. During Bullman's testimony, the State introduced a copy of the dissolution decree without objection from Bullman. After that evidence had been admitted, Bullman argued that Judge Curtis should not have decided the directed verdict issue, because Judge Curtis had previously issued the default judgment dissolving Bullman's marriage to M.T., J.T.'s mother. Judge Curtis rejected Bullman's argument on the grounds

2

that the defense had not previously objected to her ruling on the directed verdict, and that substantial evidence had been admitted proving that the marriage had existed.

¶3 Upon his conviction, Bullman appealed the denial of the directed verdict to this Court. *See State v. Bullman*, 2009 MT 37, ¶¶ 17-23, 349 Mont. 228, 203 P.3d 768 (*Bullman I*). That appeal did not raise any issue concerning Judge Curtis' alleged conflict of interest based on the divorce decree. We affirmed Bullman's conviction, but reversed for resentencing to correct improper sentencing conditions on parole. *Bullman I*, ¶ 39.

¶4 The present appeal stems from Bullman's petition for post-conviction relief (PCR) filed on May 19, 2010. Bullman alleged ineffective assistance of trial counsel (IAC), prosecutorial misconduct, failure of the prosecutor to disclose material evidence, inadmissibility of other acts evidence and improper exclusion of his expert. After the State responded, Bullman sought and received several extensions to gather evidence and file his reply. One day before his reply brief was due, on March 30, 2011, Bullman sought leave to file an amended petition. The District Court granted the motion to allow Bullman "the opportunity to submit further record and evidence to support his claims" but specifically prohibited Bullman from asserting new claims such as IAC of appellate counsel. Bullman petitioned to this Court for supervisory control, alleging that the District Court erred when it denied his requests for discovery and improperly barred him from raising new claims in his amended PCR petition. We denied that petition in *Bullman v. Curtis*, 362 Mont. 543, 272 P.3d 124 (*Bullman II*).

¶5 Bullman then filed his amended PCR petition on October 22, 2012, which the District Court denied. Unbeknownst to Bullman, Judge Robert Allison had assumed the bench to

3

replace Judge Curtis in the PCR proceeding. Judge Allison had previously represented M.T. in her divorce from Bullman. Bullman now appeals the denial of his amended PCR petition.

## STANDARDS OF REVIEW

¶6      Appropriate standards of review will be addressed as they arise in this opinion.

## DISCUSSION

¶7      *Did the District Court err by denying Bullman the right to raise additional claims in his Amended PCR Petition?*

¶8      A district court may set deadlines in a PCR petition as it sees fit, and we review its decision for an abuse of discretion. *Sellner v. State*, 2004 MT 205, ¶ 16, 322 Mont. 310, 95 P.3d 708. Bullman argues that the District Court should have allowed his amended PCR petition to allege new claims not argued in the original PCR petition.

¶9      A district court may, by its own motion, set a deadline for amending an original petition. Section 46-21-105(1), MCA. "[N]either ignorance of the law, nor the need for time to present a pro se defense, is an acceptable excuse for failing to timely file a petition for postconviction relief." *State v. Redcrow*, 1999 MT 95, ¶ 40, 294 Mont. 252, 980 P.2d 622 (citations omitted). In this case, the court found that Bullman filed his original petition "at the eleventh hour" after being granted extensions to gather evidence. The State responded to the petition, and Bullman requested an extension of time to file his reply. Nearly a year after filing his original petition, and one day before the deadline to file his reply, Bullman sought to amend his petition. The District Court granted the request, but limited Bullman's amendment to his original claims, reasoning that the addition of new claims would require the entire proceeding to "essentially begin anew."

4

¶10    The District Court did not abuse its discretion in limiting the scope of the amended PCR petition to the claims in his original petition. The plain language of § 46-21-105(1), MCA, provides that a district court may set deadlines as it sees fit, as long as the court does not abuse its discretion or the PCR petition is not subject to the new evidence limitation under § 46-21-102(2), MCA. *Sellner*, ¶ 16. Bullman was afforded several extensions for his petition and reply, and those extensions were granted so that Bullman could gather more evidence to support his claims in the original petition. Bullman never revealed his intention to amend his original petition until well after these extensions were granted, and the State had replied. Bullman's new claims were not only untimely, they would have had the effect of commencing anew a PCR proceeding that had already exceeded one year. The District Court acted within its discretion in setting deadlines for Bullman's PCR petition and limiting claims raised to those set forth in the original petition.

¶11    *Did Judge Curtis have an impermissible conflict of interest based on her ruling in a previous civil case involving Bullman?*

¶12    When a petitioner has been afforded the opportunity for a direct appeal of his conviction, grounds for relief that could reasonably have been raised on direct appeal may not be raised, considered, or decided in a PCR proceeding. Section 46-21-105(2), MCA. At trial, Bullman objected to the District Court's holding on the directed verdict because Judge Curtis had previously ruled on his divorce proceeding. Bullman had an opportunity to raise that argument in his appeal to this Court in *Bullman I*, but failed to do so. That failure constituted a waiver of the argument, and Bullman is now prohibited by statute from raising that argument in his PCR petition or appeal to this Court.

¶13  *Did Judge Allison have an impermissible conflict of interest based on his previous representation of Bullman's wife in a divorce proceeding?*

¶14  The well-established common law rule is that recusal is required when a judge has a direct, personal, substantial, or pecuniary interest in a case. *Reichert v. State*, 2012 MT 111, ¶ 31, 365 Mont. 92, 278 P.3d 455 (citing *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 876-77, 129 S. Ct. 2252, 2259 (2009); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820, 106 S. Ct. 1580, 1584 (1986); *State ex rel. Mueller v. Tenth Jud. Dist. Ct.*, 87 Mont. 108, 114, 285 P. 928, 930 (1930)).  "In Montana, such matters are addressed and governed by the 2008 Montana Code of Judicial Conduct.  And '[b]ecause the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution.  Application of the constitutional standard . . . will thus be confined to rare instances.'"  *Reichert*, ¶ 31 (citing *Capterton*, 556 U.S. at 890, 129 S. Ct. at 2267).  Montana's Code of Judicial Conduct Rule 2.12 requires that a judge disqualify himself "in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:  (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding."  A judge shall also disqualify himself if the judge "served as a lawyer in the matter in controversy."  Mont. Code of Jud. Conduct 2.12(A)(5)(a).

¶15  Because the Code of Judicial Conduct was adopted by this Court in 2008, we recognize that our jurisprudence on this issue is underdeveloped.  We have previously required recusal in analogous facts to this case, however. *See Shultz v. Hooks*, 263 Mont.

6

234, 867 P.2d 1110 (1994). There, attorney Ted Lympus represented Shultz for several years in a guardianship accounting action and eventually withdrew representation, whereupon Shultz retained Hooks to complete the action. *Shultz*, 263 Mont. at 237, 867 P.2d at 1112. Shultz later brought a malpractice action against Hooks in front of Judge Lympus, Shultz's original attorney in the accounting action. *Shultz*, 263 Mont. at 236, 867 P.2d at 1111. We required disqualification of Judge Lympus based on § 3-1-803, MCA:

> A judge is not prevented from presiding over matters which involved his or her prior clients if the action involves another matter. Although this malpractice action is technically a separate action from the underlying suit . . . it arises from the legal representation in that [underlying] lawsuit, albeit the representation by Hooks and not that of Judge Lympus.

*Shultz*, 263 Mont. at 237, 867 P.2d at 1112.

¶16 We later overruled *Shultz* in *In re Markegard*, 2006 MT 111, ¶¶ 23-24, 332 Mont. 187, 136 P.3d 532 on the grounds that the plain language of § 3-1-803, MCA, only requires disqualification where representation and adjudication both occurred in the same action, and therefore, a judge was not required to disqualify himself in a separate and related action. The plain language of Rule 2.12 is not as narrow, however, and requires disqualification when the judge has personal knowledge of disputed facts. Mont. Code of Jud. Conduct 2.12(A)(1). Nor is the Rule limited to previous representation in the same action, but rather, applies to previous representation in the *matter in controversy*. Mont. Code of Jud. Conduct 2.12(A)(5)(a). A "matter" is defined as "[s]omething that is to be tried or proved; an allegation forming the basis of a claim or defense . . . ." *Black's Law Dictionary* 999 (Bryan

7

A. Garner ed., 8th ed., West 2007). A matter in controversy, therefore, includes any disputed factual allegation that is material to the resolution of a legal issue.

¶17 With this interpretation in mind, the plain language of Rule 2.12 clearly requires recusal when the judge has personal knowledge of disputed facts stemming from his previous representation of a client in a separate and related matter. Bullman's PCR petition alleged IAC on the grounds that his trial counsel failed to sufficiently contest Bullman's marriage to M.T. Because Judge Allison had previously represented M.T. in dissolving her marriage to Bullman, he had direct involvement and personal knowledge of the fact that Bullman was married to M.T., a factual issue that was material to Bullman's PCR petition. Under the plain language of Rule 2.12, Judge Allison was required to disqualify himself based on this personal knowledge. We therefore reverse the court's denial of Bullman's PCR petition, and remand to the District Court for assignment to a new judge who shall consider Bullman's amended PCR petition anew. In light of this ruling, we decline to reach the final two issues concerning Bullman's allegations of IAC and prosecutorial misconduct.

## CONCLUSION

¶18 We affirm the District Court's limitation of new claims in Bullman's amended PCR petition, but remand for reconsideration of Bullman's amended PCR petition by a new judge. We decline to reach the merits of Bullman's amended PCR petition.

/S/ MICHAEL E WHEAT

We Concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER

8

/S/ LAURIE McKINNON
/S/ JIM RICE