DA 14-0516

FILED

September 8 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0516

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 268N

IN THE MATTER OF:

A.A., D.A., D.A.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Teton, Cause Nos. DN 12-06, DN 12-07, DN 12-08
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Wade Zolynski, Chief Appellate Defender; Helena, Montana
          (for Birth Father)

          Paul D. Sullivan, Measure, Sampsel, Sullivan & O'Brien, P.C.; Kalispell,
          Montana (for Birth Father)

          Mark Hollister Frisbie, Attorney at Law; Great Falls, Montana (for Birth
          Mother)

          Sarah Chase Rosario, Attorney at Law; Great Falls, Montana (for Youths)

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
          Assistant Attorney General; Helena, Montana

          Joe W. Coble, Teton County Attorney, Jennifer Stutz, Deputy County
          Attorney; Choteau, Montana

                           Submitted on Briefs:  July 22, 2015
                                 Decided:  September 8, 2015

Filed:

                      _____
                                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 J.A. (Father) is the father of three children. On July 26, 2012, the Department of Public Health and Human Services received a report concerning the children. It was reported that, upon request by the mother of the children (Mother), Father handed her a belt. Mother looped the belt around the neck of her youngest child to cut off her air supply and proceeded to kneel on the child's chest while placing a hand over her mouth and nose. Father stood by and did not attempt to intervene. Father later admitted that Mother had tried to kill their children six or more times within a span of one year, typically by strangling them with the belt or choking them with her hands.

¶3 The next day, the Department removed the children from the custody of their parents and initiated abuse and neglect proceedings. On August 2, 2012, the District Court issued orders granting emergency protective services for the children, appointing a court-appointed special advocate (CASA), and providing legal counsel to "assist the CASA guardian ad litem with legal issues . . . ." The legal counsel appointed to assist the CASA guardian ad litem was Robert Olson, who would eventually preside as judge in this matter. Then-counsel Olson attended no court hearings and filed only one document

2

with the court before moving for leave to withdraw as counsel for the guardian ad litem, which was granted.

¶4    On January 22, 2013, after he had taken the bench, Judge Olson conducted a review hearing on the case. During the hearing, no mention was made of his prior involvement in the proceeding as counsel for the CASA guardian ad litem. On May 22, 2013, Judge Olson held a hearing on the Department's petition to extend temporary legal custody and, again, no mention was made of his prior involvement. On November 12, 2013, the Department filed petitions to terminate Father and Mother's parental rights. On March 11, 2014, the court conducted a hearing on the Department's petition to terminate, which was continued until March 20, 2014, and ultimately resulted in the termination of Father's right to parent his children. Nothing in the record before us indicates the parties raised or discussed Judge Olson's prior involvement in the matter during the original hearing.

¶5    At the continuation of the hearing, Father's attorney requested that the proceedings be suspended, arguing that Judge Olson had a conflict of interest due to his prior representation of the guardian ad litem. Father's attorney argued that then-counsel Olson had participated "extensively" in the proceedings. Judge Olson denied the request, stating he had "previously advised counsel for the father" of his involvement with the case "early on" and that Father's attorney had waived any potential conflicts. Father now appeals the court's findings of fact, conclusions of law, and orders terminating his right to parent the children, raising this issue.

¶6 Father argues Judge Olson should have recused himself from the termination proceedings, citing two authorities. First, Father argues recusal was necessary under § 3-1-803(3), MCA, which provides that any judge "must not sit or act in any action or proceeding" when he has "been attorney or counsel in the action or proceeding for any party . . . ." Second, Father cites Rule 2.12(A)(5)(a) of the Code of Judicial Conduct, which provides that any judge who has "served as a lawyer in the matter in controversy" should disqualify himself. Father offers that, despite Judge Olson's assertion that any potential conflict had been waived, nothing in the record indicates such a waiver occurred and that, even though a waiver process is provided in the Code, it is not clear that waiver is permitted under the statute. Finally, Father contests Judge Olson's statement that his representation of the guardian ad litem was *de minimis*, noting that neither the statute nor the rule require a judge's involvement in the matter to have been substantial to necessitate recusal. Father concludes by asserting Judge Olson's failure to recuse "compromised the fairness of the termination hearing and should result in a reversal . . . ."

¶7 In response, the State first notes that Father has failed to provide any legal support or analysis for his contention that disqualification under § 3-1-803, MCA, is not capable of waiver, and has thus failed to meet his burden of demonstrating reversible error. The State argues that the statute applies more narrowly than the Code, requiring disqualification only if the judge was an attorney "for any party" in the proceeding. Because Judge Olson represented the guardian ad litem, who is not a named party and has

4

no personal interest in an abuse and neglect proceeding, the State argues that recusal was not required.

¶8 With respect to Father's argument based on the Code, the State does not dispute that Judge Olson "served as a lawyer in the matter or controversy," but notes that any conflict contemplated by the rule is waivable under Rule 2.12(C). The State argues that Judge Olson found as a matter of fact that Father had waived the conflict, Father did not contest Judge Olson's finding on this point, and Father did not object to Judge Olson's involvement until the end of the proceeding. The State points out that Father has not provided the transcripts of all the hearings Judge Olson presided over and, consequently, it cannot be demonstrated that his finding of waiver was clearly erroneous.

¶9 We review a trial court's interpretation of a statute or court rule de novo. *Dick Irvin, Inc. v. State*, 2013 MT 272, ¶ 18, 372 Mont. 58, 310 P.3d 524. When construing codified Court rules, such as § 3-1-803, MCA, the first step "is to examine the plain language of the writing and, if the language is clear and unambiguous, we may not proceed to apply any other means of interpretation." *In re Marriage of Markegard*, 2006 MT 111, ¶ 18, 332 Mont. 187, 136 P.3d 532. We generally review a district court's findings of fact for clear error. *State v. Braulick*, 2015 MT 147, ¶ 13, 379 Mont. 302, 349 P.3d 508.

¶10 We agree with the State that under the language of § 3-1-803, MCA, Judge Olson was not required to recuse himself. A guardian ad litem is not a named party in an abuse and neglect proceeding and is charged with "the representation of the child's best

5

interests." Section 41-3-112(3), MCA. In effect, a guardian ad litem acts as an agent of the court, and is not a party to the action. By serving as counsel for the CASA guardian ad litem in this case, Judge Olson was not an "attorney . . . in the action or proceeding for any party" as contemplated by the statute. We have previously noted the inconsistency between the statute's requirement for disqualification and Rule 2.12's broader application to a judge who has "served as a lawyer in the matter in controversy." *See Bullman v. State*, 2014 MT 78, ¶ 16, 374 Mont. 323, 321 P.3d 121 ("The plain language of Rule 2.12 is not . . . limited to previous representation in the same action, but rather, applies to previous representation in the *matter in controversy*.") (emphasis in original). We have also cited the Rule in conjunction with application of the statute in a case where the State conceded that recusal was necessary. *In re B.W.S.*, 2014 MT 198, 376 Mont. 43, 330 P.3d 467. Here, when Father entered a conflict of interest objection to Judge Olson's role late in the proceeding, Judge Olson explained on the record that he had raised the matter early in the proceeding and received an assurance it had been waived at that time. While the limited record before us does not reflect this occurrence, neither does it contain any objection, evidence or information contradicting the judge's statement. While judges and the parties must follow the waiver procedures under Rule 2.12(C) and ensure that waivers are placed on the record as provided therein, we conclude under these circumstances and on this record that the necessity for reversal has not been established.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal

presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶12 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER