FILED

06/01/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0527

DA 19-0527

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 136N

STATE OF MONTANA,

     Plaintiff and Appellee,

   v.

MARCIAL MEJIA JR.,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 15-0913
Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         Chad Wright, Appellate Defender, Michael Marchesini, Assistant
Appellate Defender, Helena, Montana

     For Appellee:

         Austin Knudsen, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

         Scott Twito, Yellowstone County Attorney, Morgan E. Dake, Deputy
County Attorney, Billings, Montana

Submitted on Briefs: April 21, 2021

Decided: June 1, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     A jury found Marcial Mejia Jr. guilty of felony sexual intercourse without consent in violation of § 45-5-503, MCA.  Mejia appeals his conviction entered in the Thirteenth Judicial District Court, Yellowstone County.  We affirm.

¶3     At trial and on appeal, the parties presented two different versions of the events surrounding the night in question and the sexual assault for which Mejia has been convicted.  The majority of the disputed facts are irrelevant for our determination of the issue raised on appeal.  The parties agree that in November 2012, thirty-year-old Mejia sent a Facebook friend request to fourteen-year-old T.N.  T.N. accepted the request, the two exchanged phone numbers, and Mejia told T.N. she should contact him if she ever wanted to hang out.  One evening shortly after they had exchanged numbers, Mejia picked T.N. up and the two eventually ended up at Mejia's residence where T.N. testified Mejia sexually assaulted her.  Mejia summarily denied the sexual assault and testified that he had waited in the kitchen while T.N. used the restroom.  Mejia said that he then drove T.N. home.  T.N. did not initially report the assault to anyone.

¶4     In 2015, T.N. was detained at Riverside Youth Correctional Facility (Riverside) where she received drug addiction treatment.  In April 2015, T.N. disclosed the

2

sexual assault to her counselor at Riverside. Mejia was arrested and subsequently charged with felony sexual intercourse without consent in September 2015.

¶5 In May 2017, defense counsel conducted a pretrial interview with T.N. and the following exchange took place:

T.N.: Um, I think I did use drugs earlier that day [of the sexual assault].

Defense Counsel: Okay, and what would that have been?

T.N.: Methamphetamine.

Defense Counsel: Okay. How much earlier that day?

T.N.: Um, I don't know, I want to say like sometime around the afternoon.

Defense Counsel: Okay, so you were still under the influence of that when [Mejia] picked you up?

T.N.: Probably.

Defense Counsel: Okay, were you a daily user at the time?

T.N.: *chuckles* Yes.

. . .

T.N.: And after while like [the people I was using methamphetamine with] would ask me if I wanted to get high more often.

Defense Counsel: Um hmm.

T.N.: . . . and then over the summer and then like towards the winter time [of 2012] is when it like I started doing it more and more and more. And they were giving me bath salts and they were shooting me up inside of my sleep so like there's a lot that went on and happened that I don't really remember that good like in between those times but during like I think November and stuff I was trying to stop.

Defense Counsel: Okay but it was affecting you?

T.N.: Yeah.

3

Defense Counsel: Your ability to remember stuff.

T.N.: Yes.

.    .    .

T.N.: . . . I remember when I was in jail and I was like, you know going to treatment, they told me like you know you're not like no, and they said that you know like I was on the verge of being schizophrenic because of like getting shot up with bath salts and people smoking bath salts.

Defense Counsel: And that's 2012 and 2013 yeah?

T.N.: Yeah.

¶6      Three weeks before trial, the State filed a motion in limine to exclude evidence of T.N.'s character and potential evidence regarding prior bad acts. In relevant part, the State moved to exclude reference of T.N.'s drug use. During the final pretrial hearing, Mejia objected to the motion and asked to cross-examine T.N. not only about her drug use on the day of the offense, but also about the fact "that she was a habitual addict to meth." Defense counsel cited the May 2017 pretrial interview with T.N. and argued that T.N.'s responses in the interview were critical impeachment evidence and that the defense should be allowed to go into T.N.'s drug habit as it related to her subsequent inability to recall the events surrounding the sexual assault. The District Court excluded mention of or inquiry into T.N.'s drug use but allowed Mejia to cross-examine T.N. about her drug use to the extent she might have been under the influence when the offense occurred and its impact on her ability to perceive the events of the assault. The District Court further ruled that Mejia could "ask T.N. whether her long-term drug use

4

affected her memory of this event." The District Court's ruling is the subject of this appeal.

¶7 At trial, T.N. told the jury during her direct examination that she had smoked meth on the day in question. On cross-examination, defense counsel questioned T.N. about, among other things, her drug use on the day of the offense and whether her drug use affected her long-term memory. T.N. admitted she "had smoked meth earlier that day," but she stated she was "not high on meth during the time [of the offense]." When further questioned by defense counsel about whether she was still under the influence of meth during the sexual assault, T.N. responded, "Not really." Counsel specifically asked T.N. if drug use affected her long-term memory and recall of the events that took place. T.N. responded that it did not and clarified that her drug use at one point in time affected her memory but that it had not impacted her recall of the sexual assault. Defense counsel pressed T.N. on the matter, asking, "You don't recall talking about [your long-term drug use] and saying that it had some impact on [your recall of the events]?" T.N. further clarified that drug use had impacted her memory after the event because she "started using drugs heavier after it had happened, to block it out."

¶8 After a three-day trial, a jury found Mejia guilty of felony sexual intercourse without consent. The Court sentenced Mejia to 40 years to the Montana State Prison with 20 years suspended and designating him a Level 2 Sex Offender under § 46-23-509(3)(b), MCA.

¶9 The issue raised on appeal is whether the District Court abused its discretion when it granted the State's motion in limine, limiting Mejia's inquiry into T.N.'s drug use.

5

¶10 This Court reviews a district court's grant or denial of motions to admit or exclude evidence, including motions in limine, for an abuse of discretion. *State v. Polak*, 2018 MT 174, ¶12, 392 Mont. 90, 422 P.3d 112. A trial court has broad discretion in determining whether evidence is relevant and admissible. *State v. Strang*, 2017 MT 217, ¶ 14, 388 Mont. 428, 401 P.3d 690. A district court abuses its discretion if it "acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Strang*, ¶ 14. "A district court is bound by the Rules of Evidence and applicable statutes, and we review a district court's application of a statute or rule of evidence de novo." *Polak*, ¶12 (internal citations omitted).

¶11 Mejia argues the District Court abused its discretion by excluding relevant evidence bearing on T.N.'s reliability and credibility. He argues T.N. admitted in her pretrial interview that she was a daily user of methamphetamine and bath salts at the time of the sexual assault. Mejia argues that her "constant and heavy use of these brain-altering drugs adversely impacted her memory, resulted in confusion and detachment from reality, triggered borderline schizophrenia, and caused hallucinations," and he maintains that the scope, severity, and side effects of T.N.'s drug habit were relevant impeachment evidence because they bore on whether T.N. was high during the alleged incident and her capacity to perceive and recount events from 2012 and 2013 generally. Such drug use, Mejia argues, would have given the jury reason to question the accuracy of T.N.'s memory and the truthfulness of her testimony. Mejia argues that preclusion from directly questioning T.N. about the true scope of her drug use was an abuse of discretion.

¶12 This Court has held that "the mere use of narcotics is not admissible to impeach witness credibility 'unless it is proposed to show that the witness was under the influence of the drugs at the time the events happened about which she testified.'" *State v. Sorenson*, 190 Mont. 155, 165, 619 P.2d 1185, 1191 (1980) (quoting *State v. Gleim*, 17 Mont. 17, 31, 41 P. 998, 1001 (1895)). Such evidence is admissible for impeachment purposes because it may show that drug usage has "impaired the witness's facilities" and bears on the witness's ability to accurately perceive the events about which she testifies. *Sorenson*, 190 Mont. at 166-67, 619 P.2d at 1191-92.

¶13 In its order, the District Court relied on our decision in *Sorenson*.[1] The court excluded an unfettered inquiry into T.N.'s drug use history but allowed Mejia to cross-examine T.N. about her drug use on the day of the offense and whether she was under the influence of meth at the time of the offense. Notably, the court went even further in its written order, allowing Mejia to ask T.N. whether her long-term drug use affected her memory of the sexual assault. Contrary to his argument on appeal, the

---

[1] Mejia argues the District Court misapplied *Sorenson* in concluding drug habit evidence was per se inadmissible and maintains that the court's interpretation of *Sorenson* was too narrow. Mejia correctly points out that this Court's holding in *Sorenson* held that evidence of a witness' drug use is inadmissible *if there is no evidentiary link* between the drug use and the witness' capacity to testify accurately. (Emphasis added.) We decline to address this argument, however, because the District Court did not conclude T.N.'s drug habit was per se inadmissible. The Court simply, and correctly, limited Mejia's questioning to whether T.N. was on meth at the time of the offense and whether "T.N.'s long-term drug use affected her memory" of the offense at issue. This ruling is consistent with M. R. Evid. 401-02. Mejia never established a basis for the relevance of his requested inquiry. Though the defense attempted to offer proof of T.N.'s alleged mental impairment or disorder from long-term drug use, its evidentiary foundation was weakly supported. Mejia predicated his mental disorder theory on T.N.'s interview comment that her drug use at times put her "on the verge of being schizophrenic." Such statement does not support the theory that T.N. suffered from any bona fide mental impairment or disorder and thus does not establish relevance between a mental health condition and the alleged impairment of T.N.'s memory of events.

7

District Court allowed Mejia to cross-examine T.N. about her drug habit and whether it affected her memory of the sexual assault. Indeed, to the extent T.N.'s responses in the pretrial interview contradicted her responses at trial—as they related to her ability to recall the event and whether she was under the influence at the time of the event—Mejia was permitted to introduce relevant impeachment evidence from the interview.

¶14 When questioned at trial about her drug use near the time of the offense, T.N. told the jury she was not a daily meth user at that time and was not high on meth at the time of the sexual assault, despite having smoked earlier that day. When asked again if she had been under the influence of meth at the time of the offense, T.N. responded, "Not really." After defense counsel questioned T.N. about the impact T.N.'s drug use had on her long-term memory, T.N. clarified that drug use had impacted her memory after the event because she "started using drugs heavier after it had happened, to block it out." The extent to which the District Court permitted defense counsel to cross-examine T.N. was sufficient for Mejia to call into question T.N.'s credibility and reliability in a closing argument. Any further questioning into the matter would needlessly have opened the door to a full-scope inquiry into T.N.'s prior and subsequent drug use. The only purpose served by such questioning would have been to impugn T.N.'s character.

¶15 Though the District Court's rationale did not cite or expressly rely on Montana's Rules of Evidence, we note that M. R. Evid. 403 also would have precluded further inquiry into T.N.'s prior drug use. Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

delay, waste of time, or needless presentation of cumulative evidence." Additional questioning "effectively would have put [T.N.] on trial and it easily could have caused the jury to attach undue importance to an extraneous and prejudicial matter." *State v. Passmore*, 2010 MT 34, ¶ 63, 355 Mont. 187, 225 P.3d 1229 (internal citation omitted). Even assuming that Mejia had laid proper foundation that T.N.'s "constant and heavy use of these brain-altering drugs adversely impacted her memory, resulted in confusion and detachment from reality, triggered borderline schizophrenia, and caused hallucinations," a careful review of the record and Mejia's citations to the interview do not support Mejia's assertion that T.N.'s drug habits caused her to be confused, detached from reality, or had triggered borderline schizophrenia *as it would relate to the offense*. Thus, an unrestricted inquiry into T.N.'s drug use history would have been irrelevant, and its probative value would have been substantially outweighed by the danger of unfair prejudice to T.N.

¶16 Moreover, evidence that T.N. purportedly lied (or inaccurately described) her drug use before and after the sexual assault would have had very little probative value when determining whether Mejia sexually assaulted her. The evidence would have been cumulative, as the proposition that she was a meth addict was plainly presented to the jury in various mentions of T.N.'s meth use and getting addiction treatment at Riverside. Similar evidence, having little probative value, would be cumulative and create a substantial risk of confusing the jury. The line of questioning was thus properly excluded not only under *Sorenson*, but also under Rule 403.

9

¶17 As a final argument, Mejia argues the District Court's evidentiary error prejudiced his defense. Consistent with our forgoing analysis, we conclude this argument must fail. Mejia was permitted to, and did, inquire into T.N.'s drug history as it related to her memory of the event and whether or not she was under the influence of drugs at the time of the sexual assault. The extent to which the court permitted Mejia's cross-examination on the subject was not error but an appropriate exercise of discretion.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE