
DA 09-0335

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2010 MT 41

---

IN THE MATTER OF K.J.,

    A Youth.

---

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDJ 06-263
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Lisa B. Kauffman, Attorney at Law, Missoula, Montana

    For Appellee:

    Hon. Steve Bullock, Montana Attorney General; Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

    John Parker, Cascade County Attorney; Matt Robertson, Deputy County Attorney; Great Falls, Montana

---

Submitted on Briefs:  January 20, 2010

Decided:  March 2, 2010

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     K.J. appeals the Youth Court's order denying his motion to dismiss for lack of probable cause. We affirm.

¶2     We review the following issues on appeal:

¶3     *Did the notice provided by Officer Dilley to K.J. of his potential arrest satisfy the due process requirements of the Youth Court Act?*

¶4     *Did the Youth Court properly deny K.J.'s motion to dismiss for lack of probable cause?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     The City of Great Falls created the Great Falls Housing Authority (GFHA) in 1938 pursuant to §§ 7-15-4401–4532, MCA. GFHA owns and operates five public housing complexes in the City of Great Falls. Officer Otis Dilley (Officer Dilley) of the Great Falls Police Department served K.J. with notice on February 10, 2008, that K.J. was not allowed on any GFHA properties.

¶6     K.J. was recovering from a stab wound and on pain medication when Officer Dilley presented the notice to K.J. and his mother. K.J. signed the notice. The notice included an acknowledgement that K.J. could be arrested if he returned to property owned by GFHA.

¶7     A witness reported seeing K.J. at the GFHA Parkdale complex on July 9, 2008. Officer Dilley responded to the report, arrested K.J. for trespass, and released him to his mother. The same witness reported seeing K.J. again on August 20, 2008. Officer Dilley was unable to locate K.J., but sent a citation to his residence. Another witness reported K.J.

2

for trespass on August 25, 2008. Officer Dilley located K.J., but K.J. fled upon making eye contact with Officer Dilley. Officer Dilley forwarded another citation to K.J.'s residence. Officer Dilley repeated this process on September 3, 2008, in response to another witness report.

¶8 Officer Dilley arrested and detained K.J. for trespassing on GFHA property on September 4, 2008. Two days after K.J. was released from detention, a witness reported that K.J. was again trespassing on GFHA property. Officer Dilley was unable to locate K.J. and sent a citation to his home. Officer Dilley saw K.J. standing in front of GFHA property on September 26, 2008. K.J. fled and Officer Dilley summoned assistance. Five other officers joined in the foot pursuit and apprehended K.J. approximately three blocks from the GFHA property.

¶9 The Great Falls Police issued citations and detained K.J. on a $1,000 bond. The State filed a youth court petition charging K.J. with seven counts of misdemeanor criminal trespass to property and one count of misdemeanor obstructing a police officer on September 30, 2008.

¶10 K.J. filed a motion to dismiss in Youth Court. He argued that the notice provided by Officer Dilley had been insufficient on its face to alert him to the potentially criminal nature of his conduct. He argued that the Youth Court should deem void Officer Dilley's notice. K.J. argues on appeal that the Youth Court lacked probable cause to convict in light of the lack of adequate notice.

¶11 The Youth Court denied K.J.'s motion to dismiss on February 27, 2009. The Youth Court disagreed with K.J. that the question of notice constituted a legal question rather than a factual question. The Youth Court concluded that the question of whether K.J. had been put on notice presented a question of fact for the jury.

¶12 K.J. entered into a plea agreement with the State on March 2, 2009. K.J. agreed to plead true to three counts of criminal trespass and one count of obstructing a peace officer. The State agreed to drop the remaining trespass charges. The State recommended commitment of K.J. until his 18th birthday, suspended in favor of probation. The Youth Court entered its dispositional order committing K.J. to the Montana Department of Corrections on April 8, 2009. The Youth Court suspended the commitment and placed K.J. on probation for three years.

## STANDARD OF REVIEW

¶13 We review for correctness a youth court's application and interpretation of the Youth Court Act. *In re G.T.M.*, 2009 MT 443, ¶ 9, 354 Mont. 197, ___P.3d___. A due process claim presents a question of constitutional law over which this Court exercises plenary review. *In re B.I.*, 2009 MT 350, ¶ 11, 353 Mont. 183, 218 P.3d 1235. A trial court's grant or denial of a motion to dismiss in a criminal case presents a question of law that we review *de novo*. *State v. Giddings*, 2009 MT 61, ¶ 42, 349 Mont. 347, 208 P.3d 363.

## DISCUSSION

¶14 *Did the notice provided by Officer Dilley to K.J. of his potential arrest satisfy the due process requirements of the Youth Court Act?*

4

¶15 K.J. argues for the first time on appeal that the notice given to him by Officer Dilley had been constitutionally deficient. K.J. argues that the notice should be deemed void for vagueness. K.J. claims specifically that the notice had been unconstitutionally vague due to its lack of specificity as to its duration and geographic boundaries. K.J. next argues that the notice violated his right to due process under the Youth Court Act. K.J. does not challenge the ability of GFHA, as a property owner, to prohibit him from entering its property. Municipal housing authorities in Montana may acquire, sell, exchange, or lease property. Section 7-15-4460, MCA. Commensurate with these rights is the State's ability to control the use of the property that it owns. *Adderley v. Florida*, 385 U.S. 39, 47, 87 S. Ct. 242, 247 (1966). A housing authority possesses the same right to exclude as the owner of a private housing complex. *State v. Blair*, 827 P.2d 356, 359 (Wash. App. 1992).

¶16 K.J. claims that his signing of the form in Officer Dilley's presence represented, in effect, an "extra-judicial statement." K.J. argues that the "spirit" of the safeguards inherent in §§ 41-5-331 and 1415, MCA, should apply to a situation "where a police officer has juveniles sign documents that can be used against them in subsequent prosecutions." K.J. equates this situation to a "custodial interrogation" that triggers the procedural requirements of § 41-5-331, MCA.

¶17 The State counters that K.J. waived these claims on appeal by failing to raise either claim in Youth Court. K.J. urges this Court to address his constitutional claims by exercising its right of review under the plain error doctrine. K.J. tacitly acknowledges his failure to raise these claims in Youth Court.

¶18 K.J. nonetheless argues in his reply brief that he did in fact raise his constitutional claims in Youth Court. K.J. predicated his Youth Court claim on the theory that the deficiency of the notice failed to establish probable cause that K.J. had satisfied the "knowingly" element of § 45-6-203, MCA. K.J. did not invoke the constitutional claims in support of his motion to dismiss. Counsel for K.J. did mention "due process" in the course of the status hearing on his motion, but counsel made this reference in the context of the probable cause argument.

¶19 A party generally may raise on appeal only those issues or claims that it raised in the trial court. *State v. Jackson*, 2009 MT 427, ¶ 41, 354 Mont. 63, 221 P.3d 1213. A party waives issues for appeal that the party failed to raise before the trial court. *Id*. This Court discretionarily may review a claim not raised below where the claim implicates a defendant's "fundamental constitutional rights." *Id*. at ¶ 42. We invoke the plain error doctrine only where failure to do so would pose the risk of a manifest miscarriage of justice, would leave unsettled the question of the fundamental fairness of the trial proceedings, or would compromise the integrity of the judicial process. *Id*.

¶20 K.J. entered into a plea agreement with the State. K.J. admitted, pursuant to the plea agreement, that he had been on GFHA property without permission, that he had been trespassing, that he had been given notice that he was not supposed to be on the property, and that he knew he might be arrested if he again entered the property. We cannot agree that this question implicates K.J.'s fundamental constitutional rights under these circumstances. We decline to address K.J.'s constitutional arguments on appeal where K.J. failed to raise

6

these claims before the Youth Court.

¶21 *Did the Youth Court properly deny K.J.'s motion to dismiss for lack of probable cause?*

¶22 K.J. predicated his motion to dismiss on the grounds that Officer Dilley had presented defective notice. K.J. argued that "without notice, then he can't be in violation of the statute; without notice, there's no probable cause to charge him." The Youth Court rejected this argument.

¶23 The court distinguished between notice of a charged crime and the issue of whether K.J. had been on notice that he was barred from GFHA property. The latter notice, the court observed, constituted a fundamental element of the offense, not a procedural issue. As an element of the offense, the court determined that the issue of whether K.J. had been put on notice presented a question of material fact to be weighed by the jury. The Youth Court further noted that K.J. had failed to cite any authority to bolster his argument that any further "procedural formality to advise and instruct a juvenile that he or she is not welcome on a particular premises" had been required.

¶24 A trial court determines the sufficiency of charging documents by reading the information together with the affidavit in support of the motion for leave to file the information. *State v. Elliott*, 2002 MT 26, ¶ 26, 308 Mont. 227, 43 P.3d 279. The affidavit need not make out a prima facie case that a defendant committed the charged offense. *Id*. The affidavit instead need only present a mere probability that the defendant had committed the offense. *Id.*

7

¶25 K.J. read and signed the notice Officer Dilley delivered to his home. K.J.'s mother had been present when Officer Dilley delivered the notice. The affidavit in support of the information filed by the State alleged seven counts of trespass under § 45-6-203, MCA. The affidavit explained the circumstances of each alleged trespass. The affidavit reported that Officer Dilley had informed K.J. that he was not permitted to enter GFHA property. The State had intended to use evidence of the notice to demonstrate that K.J. knowingly had entered GFHA property at a time when he could be arrested for the unauthorized entry. K.J. had the option of going to trial and presenting evidence of the notice's alleged insufficiency. K.J. instead entered into a plea agreement with the State in which he had admitted that he had committed trespass and that he knew he had been barred from entering GFHA property.

¶26 The affidavit sufficiently alleged the elements of the offense of criminal trespass contained at § 45-6-203, MCA. The Youth Court determined correctly that probable cause existed to present a question of fact for the jury as to whether K.J. knowingly had entered GFHA property at a time when he could be arrested for the unauthorized entry. K.J. chose to plead true to the charges rather than presenting evidence in support of his claims to a jury. The Youth Court correctly denied K.J.'s motion to dismiss for lack of probable cause.

¶27 Affirmed.

/S/ BRIAN MORRIS

We Concur:

8

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON

Justice Patricia O. Cotter concurs.

¶28     I join in the Court's Opinion because no challenge was made to the authority of the Great Falls Police Department to arrest for criminal trespass a person occupying public property. I write separately to call that authority into question.

¶29     K.J. was charged with criminal trespass, as defined at § 45-6-203, MCA. That statute makes it a crime to knowingly "enter[] or remain[] unlawfully in an occupied structure . . . or in or upon the premises of another." Section 45-6-203(1)(a) and (b), MCA. Section 45-6-201(1), MCA, provides in pertinent part: "A person enters or remains unlawfully in or upon any vehicle, occupied structure, or premises when the person is not licensed, invited, or otherwise privileged to do so." From the context of these statutes, it is clear that the property to which unlawful access is prohibited is private land or property, and not public property.

¶30     The notice served upon K.J. provided that he was no longer allowed in the Parkdale area or any of the other Great Falls Housing Authority sites, of which there are five. All of these sites are owned and operated by GFHA and are described on the GFHA website as "public housing sites." The Parkdale area, which was encompassed within the notice and which is where K.J. was repeatedly apprehended, is by far the largest public housing site in Great Falls, featuring multiple housing units, playgrounds, basketball courts, and even a

9

community hall. Notably, the Parkdale area comprises the equivalent of ten square blocks, and is bound and intersected by no fewer than eight public streets. It is evident from the record that K.J. was apprehended on more than one occasion while occupying the street or walkways within the Parkdale area.

¶31    I know of no ordinance or statute which subjects a person to criminal liability for occupying a public street or walkway within a housing authority, nor is one cited in the charging documents. However, because K.J. does not challenge the authority of the police department to bar his presence on public property, I concur in the Court's Opinion.

/S/ PATRICIA O. COTTER

Justice Michael E Wheat joins the Concurrence of Justice Patricia O. Cotter.

/S/ MICHAEL E WHEAT