FILED

07/30/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0522

DA 22-0522

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 160

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CODY JOSEPH VERNON FLESCH,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC-21-856
Honorable Ashley Harada, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Rufus I. Peace, Peace Law Group, LLC, Jacksonville, Florida

      For Appellee:

      Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

      Scott D. Twito, Yellowstone County Attorney, Morgan K. Lix, John
Ryan, Deputy County Attorneys, Billings, Montana

Submitted on Briefs:  May 8, 2024

Decided:  July 30, 2024

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Cody Joseph Vernon Flesch appeals the Thirteenth Judicial District Court's denial of his motion to dismiss a charge of attempted escape. He further argues that his conviction must be reversed because the presiding judge should have disqualified herself. We consider the following issues on appeal:

> *1. Whether the charge against Flesch fails as a matter of law because he was not eluding official detention when he fled the courtroom during his arraignment.*
>
> *2. Whether Flesch waived his claim that Judge Harada was disqualified from hearing Flesch's case under Rule 2.12 of the Montana Code of Judicial Conduct.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      On June 18, 2021, Flesch appeared before Judge Harada in the Yellowstone County District Court for arraignment on a charge of bail jumping. Flesch's counsel appeared remotely. Flesch had posted bond on a separate charge the night before the hearing and was released from the Yellowstone County Detention Facility. The State served Flesch with charging documents, and he entered a plea of not guilty. The State requested a bond of $200,000 consecutive to other bonds.

¶3      The State then notified the court that it had received an e-mail from the Powell County Attorney's Office that Judge Dayton in the Third Judicial District Court had issued an order for Flesch's detention. The order, issued June 11, 2021, provided that Flesch was "to be detained and held in custody pending the July 20, 2021 hearing on the State's petition to revoke his suspended sentence." The court asked the prosecutor, "Is [the order] to detain [Flesch] indefinitely with no bail?" The State responded, "It reads as if it's intended to be

2

no bond." The court told Flesch's counsel that he would receive an e-mail with the order and stated, "[T]hat order needs to be honored, but in the meantime, it would make sense for your client to have a bond in this case so that he gets credit for sitting if he's gonna get picked up on . . . that order. . . ."

¶4    Flesch interjected that he "spent every penny [he] had" to post bond in Yellowstone County the previous day. Flesch and the court had the following conversation:

> [FLESCH]: I didn't even know I had this. Nobody [k]new. I should have never been allowed to bond. That's every single penny I had to my name.
>
> THE COURT: Well, you have to understand though, that I don't have discretion to change another Judge's order. And they're ordering that you be put in detention.
>
> [FLESCH]: But you can set a bond for it. Is that what you're gonna say?
>
> THE COURT: No. I'm saying I can set a bond in your new bail jumping case so that you are getting credit for sitting in jail on this case as well.

¶5    The court told Flesch, "When that order is in effect, you are to be detained according to Judge Dayton." Flesch stated, "I didn't know nothing about it. I never would have posted bail." Flesch's counsel expressed concern that the Yellowstone County Detention Facility accepted a bond for Yellowstone County while knowing there was an order from Powell County for Flesch's detention. The State explained that there was an oversight on the part of the clerk's office in Powell County, and the detention facility did not receive a copy of the order until after Flesch was released. The court asked the State whether the detention order "is still in effect." The State confirmed that it was.

3

¶6     Flesch said that he had recently posted bond for three separate counties, including Powell County.  The court responded, "I don't think Powell County has a bond.  It says you must be detained."  Flesch suggested the detention order may have been issued mistakenly because he paid $50,000 to Powell County.  The court held the following exchange with Flesch:

> THE COURT: Okay.  But be that as it may.  There is an order for your detention out of Powell County.
>
> [FLESCH]: For a bond that I already posted that they're saying that nothing's changed?
>
> THE COURT: Right.  But again, order for detention means order for detention.
>
> [FLESCH]: Yes, ma'am.
>
> THE COURT: I can't say that Judge Dayton did something wrong; I can't say that I can overrule his order for you to be detained. . . . Based upon the information that I have today, Judge Dayton ordered as of June 11th, that you are detained.

¶7     Returning to the bond for Flesch's bail jumping in Yellowstone County, the State argued Flesch was a flight risk and posed a danger to the community.  Flesch's counsel requested that the bond be set at $5,000 and the court issue an order that whatever bond Flesch posted the day prior be returned to him.  Flesch asked to see a copy of the Powell County order, and the court provided him one.  As the court began issuing its bond amount, Flesch jumped up from the table where he was sitting and ran through the back door of the courtroom, which led to the jury room.  The transcript captured the sequence of events:

> THE COURT: Okay.  So, what I'm gonna do is I am gonna set bond in the amount of $50,000.  You must make all court appearances and obey all laws.

4

You shall not leave the State of Montana without written permission from the Court. You--Whoa!

(Noises of furniture moving and people running.)

MS. FARMER[1]: Cody! Cody! Oh my god.

DEPUTY SHERIFF 1: He's going the other way! Everybody out of the way!

THE COURT: Jury room! Jury room!

DEPUTY SHERIFF 1: You're gonna get tased!

[COUNTY ATTORNEY]: Well, that might change the bond amount.

Officers restrained Flesch in the jury room and returned him to the courtroom. The court finished reading the release conditions. Flesch apologized for his actions, and the State requested an opportunity to readdress the bond amount. Based upon Flesch's actions in the courtroom, the court increased Flesch's bond to $200,000, consecutive to other bonds.

¶8 The State later filed a motion and supporting affidavit for leave to file an information charging Flesch with felony attempted escape under §§ 45-7-306(2) and 45-4-103, MCA. The new case was assigned to Judge Harada. The State's motion alleged that on June 18, four officers with the Yellowstone County Sheriff's Office were present in the courtroom "as a security measure and because of the possibility of a remand." It noted that during the hearing the State informed the court of the Powell County order requiring Flesch's detention pending a hearing on July 20. The State contended, "As the Court began orally pronouncing the release conditions . . . [Flesch] sprang up from his chair and ran out of the [c]ourtroom." It also alleged that after the officers detained Flesch and brought him back

[1] Ms. Farmer accompanied Flesch to court that day.

5

into the courtroom, Flesch "said something to the effect of: I'm sorry, I was trying to get away." The District Court granted the State leave to file the information. The information stated that on June 18, Flesch "was subject to official detention at [the] Yellowstone County Detention Facility following a court ordered remand and orally pronounced $50,000 bond" and he "purposely or knowingly attempted to elude official detention by running out of the courtroom and attempting to avoid remand[.]"

¶9     Flesch filed a motion to dismiss, arguing that he "was not in custody at the time he bolted from the court" and therefore the State was "unable to prove its case based on the statutory definition of 'official detention.'" The State responded that the District Court had stated that it intended to or was going to remand Flesch into custody and therefore Flesch was subject to constructive restraint and in official detention. The court denied Flesch's motion to dismiss, determining that "[a] reasonable person would have understood they were being remanded on a warrant out of Powell County."

¶10    Based on the District Court's order denying Flesch's motion to dismiss, the State moved in limine to preclude Flesch from arguing at trial that he was not subject to official detention. Flesch opposed the State's motion and asserted that the issue of when he was subject to official detention would be a crucial question of fact at trial. The court agreed that the issue was a question of fact for the jury and denied the State's motion.

¶11    Judge Harada presided over a two-day jury trial. The jury found Flesch guilty of attempted escape. The court designated Flesch as a persistent felony offender under

§§ 46-18-501 and -502, MCA, and sentenced him to a term of imprisonment in the Montana State Prison for seven years. He now appeals.

## STANDARD OF REVIEW

¶12 We review de novo a district court's decision on a motion to dismiss for lack of probable cause. *State v. Giffin*, 2021 MT 190, ¶ 11, 405 Mont. 78, 491 P.3d 1288. Additionally, "we will review a judge's disqualification decision de novo, determining whether the lower court's decision not to recuse was correct under the Montana Code of Judicial Conduct." *State v. Dunsmore*, 2015 MT 108, ¶ 10, 378 Mont. 514, 347 P.3d 1220.

## DISCUSSION

¶13 *1. Whether the charge against Flesch fails as a matter of law because he was not eluding official detention when he fled the courtroom during his arraignment.*

¶14 A person commits the offense of escape "if the person knowingly or purposely eludes official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited time." Section 46-7-306(2), MCA. "Official detention" is defined under the statute as "placement of a person in the legal custody of a municipality, a county, or the state as a result of . . . the actual or constructive restraint or custody of a person by a peace officer pursuant to arrest, transport, or court order[.]" Section 45-7-306(1)(a)(ii), MCA.

¶15 Flesch contends that the plain language of "official detention" under § 45-7-306(1)(a)(ii), MCA, requires that the defendant's "actual or constructive restraint" be "by a peace officer." He claims that the court's directives in the courtroom do not qualify because "courts do not have the authority to restrain or arrest." He posits that

7

because "no person qualified as a peace officer had placed or attempted to place [him] into custody in any way," Flesch could not be found guilty of attempted escape. The State responds that the charging documents provided sufficient facts to allege the probability that Flesch was subject to official detention at the time he attempted to elude the officers by running out of the courtroom.[2]

¶16   A motion to dismiss raises the question whether the State's motion for leave to file an information and affidavit in support is legally or factually sufficient to establish probable cause—this is a mixed question of law and fact. *Giffin*, ¶ 11.

¶17   When interpreting a statute, we begin with its plain language. *Mitchell v. State*, 2015 MT 120, ¶ 9, 379 Mont. 127, 347 P.3d 1278. "We construe a statute by reading and interpreting the statute as a whole, without isolating specific terms from the context in which they are used by the Legislature." *State v. Felde*, 2021 MT 1, ¶ 19, 402 Mont. 391, 478 P.3d 825 (internal quotation and citations omitted). If the meaning of the statute is clear from the text, no further interpretation is needed. *Mitchell*, ¶ 9 (citing *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003; § 1-2-101, MCA).

¶18   The escape statute criminalizes eluding from official detention, which includes "the actual or constructive restraint or custody of a person by a peace officer pursuant to . . . court order[.]" Section 45-7-306(1)(a)(ii), MCA. The Legislature's inclusion of "constructive restraint" makes clear that the statute is not confined to situations in which a peace officer already has taken physical control of the person.

---

[2] The State raises a preliminary claim that Flesch waived the argument he makes on appeal, but we find the issue adequately preserved.

8

¶19　The purpose of the escape statute is to "cover[] any unauthorized departure from legal custody."　Section 45-7-306, MCA, *Annotations,* Annotator's Note (2022).　The Legislature's amendments to the escape statute show its evolution to achieve this broad purpose by making the definition of "official detention" more encompassing.　The 1989 version of the statute defined "official detention" as

> imprisonment which resulted from a conviction for an offense, confinement for an offense, confinement of a person charged with an offense, detention by a peace officer pursuant to arrest, detention for extradition or deportation, supervision while under a supervised release program, participation in a county jail work program under 7-32-2225 through 7-32-2227, or any lawful detention for the purpose of the protection of the welfare of the person detained or for the protection of society.

Section 45-7-306(1), MCA (1989).　The statute provided a different range of misdemeanor and felony punishments, depending on the circumstances of the offender's escape.　Section 45-7-306(3), MCA (1989).

¶20　In *State v. Savaria*, 245 Mont. 224, 800 P.2d 696 (1990), the defendant escaped from the courthouse before he could be transported back to the county jail.　*Savaria*, 245 Mont. at 225, 800 P.2d at 697.　The State appealed the district court's decision to sentence Savaria for a misdemeanor, arguing that the defendant was guilty of felony escape from the county jail.　*Savaria*, 245 Mont. at 225-26, 800 P.2d at 697.　We affirmed, holding that the statute was specific in listing the places from which escape is a felony and that the statute did not address escape by a prisoner during transport from a court appearance.　*Savaria*, 245 Mont. at 227, 800 P.2d at 698.　The Legislature amended the statute in 1991 to insert reference to escape while in transit.　1991 Mont. Laws ch. 114, §§ (3)(a), (3)(b)(i),

(3)(b)(ii), 3(c). In 1997, it amended the statute to add "the actual or constructive restraint or custody of a person" to the definition of "official detention." 1997 Mont. Laws ch. 26, § 1. The amendment also changed the definition of escape to say "eludes" rather than "removes himself" from official detention. 1997 Mont. Laws ch. 26, § 2.

¶21    Our case law regarding official detention similarly reflects a broader application than what Flesch suggests. In *State v. Thornton*, 218 Mont. 317, 708 P.2d 273 (1985), we adopted the modern jurisprudential position that "actual restraint" does not require physical restraint. *Thornton*, 218 Mont. at 322-23, 708 P.2d at 277-78. Later, in *State v. Martin*, 2001 MT 83, 305 Mont. 123, 23 P.3d 216, we upheld an escape conviction where the defendant, in the process of attempting to cash a forged check, was approached by a uniformed officer who commanded the defendant to "halt" and "stop," but the defendant instead fled. *Martin*, ¶¶ 11, 42, 45. We rejected Martin's argument that he was never placed in "official detention." *Martin*, ¶¶ 36, 45. Although the defendant was not physically restrained, the officer's commands indicated that he was under arrest. *Martin*, ¶¶ 40, 43 (citing *Thornton*, 2018 Mont. at 323, 708 P.2d at 277-78) ("Where, as here, restraint is claimed to have been accomplished via an oral statement by the officer, rather than via physical restraint, the pivotal question is whether a reasonable person—innocent of any offense—would have felt free to walk away.").

¶22    Flesch's motion to dismiss raised the question whether the charging documents stated probable cause to prosecute Flesch for attempted escape. "A trial court determines the sufficiency of charging documents by reading the information together with the

10

affidavit in support of the motion for leave to file the information." *In re K.J.*, 2010 MT 41, ¶ 24, 355 Mont. 257, 231 P.3d 75 (citing *State v. Elliott*, 2002 MT 26, ¶ 26, 308 Mont. 227, 43 P.3d 279). The affidavit need not make out a prima facie case that a defendant committed the charged offense; it need only present a mere probability that the defendant committed the offense. *In re K.J.*, ¶ 24 (citing *Elliot*, ¶ 26).

¶23    The State's motion for leave indicated that four law enforcement officers were present in or around the courtroom during Flesch's hearing "as a security measure and because of the possibility of a remand" and that Flesch "sprang up from his chair and ran out of the [c]ourtroom" after the court had directed that he was to be remanded into custody. The State noted Flesch's comment after he was restrained and returned to the courtroom that he was "trying to get away." Reading these documents together, we conclude that the State alleged sufficient facts to establish a probability that, at the time he fled the courtroom, Flesch was subject to at least the "constructive restraint or custody" of law enforcement officers pursuant to court orders.

¶24    Flesch's argument would return the statute to a restrictive definition of "official detention" that, contrary to the plain language of the statute, the Legislature's amendments, and our case law, would allow him to avoid criminal liability simply because he took off before the officers in the courtroom could carry out the judge's order. "Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it." *In re U.A.C.*, 2022 MT 230, ¶ 13, 410 Mont. 493, 520 P.3d 295 (citation omitted).

11

¶25 The District Court properly concluded instead that "[a] reasonable person would have understood they were being remanded on a warrant out of Powell County." It correctly denied Flesch's motion to dismiss and properly allowed the jury to determine whether Flesch was "eluding official detention" at the time he ran out of the courtroom. We affirm the District Court's denial of Flesch's motion to dismiss.

¶26 *2. Whether Flesch waived his claim that Judge Harada was disqualified from hearing Flesch's case under Rule 2.12 of the Montana Code of Judicial Conduct.*

¶27 Flesch argues that the plain language of Rule 2.12 of the Montana Code of Judicial Conduct required Judge Harada to disqualify herself from presiding over the attempted escape case. Rule 2.12 provides in relevant part:

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.
>
> .   .   .
>
> (5) The judge . . . was a material witness concerning the matter.

M. C. Jud. Cond. 2.12(A)(1), (5)(c). According to Flesch, Judge Harada violated Rules 2.12(A)(1) and 2.12(A)(5)(c) because she had personal knowledge of disputed facts and was a material witness to the facts in issue when the case went before a jury. The State contends that Flesch waived his disqualification claim because he raises it for the first time on appeal.

12

¶28 Except for a judge's alleged bias or prejudice, a claim for disqualification is subject to waiver. *Dunsmore*, ¶ 18 (citing M. C. Jud. Cond. 2.12(C)). Such a claim "is considered waived if a party does not raise the issue within a reasonable amount of time after the party acquires knowledge of a potential basis for disqualification." *Dunsmore*, ¶ 18. As for the scope of Rule 2.12(A)(1), "[k]nowledge about matters in a proceeding that has been obtained by a judge within the proceeding itself *or within another legal proceeding* is permissible and does not call for disqualification." *State v. Strang*, 2017 MT 217, ¶ 26, 388 Mont. 428, 401 P.3d 690 (quoting Charles Gardner Geyh et al., Judicial Conduct and Ethics § 4.10, 4-42 (5th ed. 2013) (emphasis added) (other citations omitted)). "To be disqualifying, the knowledge must be obtained extrajudicially rather than in the judge's official capacity during the course of a proceeding." *Strang*, ¶ 26 (citations omitted). Flesch's claim for disqualification is not based on knowledge that Judge Harada gained from an extrajudicial source, but through her official capacity as a judge.

¶29 We discussed in *Dunsmore* the consideration of timeliness when a criminal defendant raises the claim for the first time after sentencing. "A defendant cannot take his chances with a judge and then, if he thinks that the sentence is too severe, secure a disqualification and a hearing before another judge." *Dunsmore*, ¶ 17 (quoting *Taylor v. United States*, 179 F.2d 640, 642 (9th Cir. 1950)). We found Dunsmore's claim waived when he raised it for the first time on appeal because "Dunsmore and his attorney were aware of [the presiding judge's prior] representation of Dunsmore's daughter in the abuse and neglect case but chose not to move for recusal." *Dunsmore*, ¶¶ 15, 19.

13

¶30     In this case, Flesch and his counsel were present during the June 18 hearing that gave rise to the attempted escape charge.  Flesch's counsel first knew of the factual basis for a disqualification claim when this case was assigned to Judge Harada.  Flesch and his counsel participated throughout the proceedings with Judge Harada presiding, including a full trial and sentencing.  Flesch did not raise the issue until this appeal.  Thus, unless he has made out a case of bias or prejudice, Flesch waived his claim for disqualification of Judge Harada.[3]

¶31     Flesch did not address his claim of disqualification—or the State's contention that he waived it—in his reply brief.  His opening brief states rather tepidly that "there are indications in the record that Judge Harada possibly held a bias against Flesch following the incident. . . ."  Flesch points to the following conversation between Flesch and the court immediately following the incident at his arraignment hearing:

> THE COURT: Frankly, I'm afraid to have you have a pen at this point.
>
> [FLESCH]: I understand.
>
> THE COURT: I'm afraid to take your hands out of the restraints.
>
> [FLESCH]: I understand.

Flesch additionally points to the following statement by Judge Harada at sentencing in this case:

---

[3] This includes Flesch's contention that Judge Harada should have disqualified herself as "part of the chain of custody for key evidence" after she requested a copy of the video of the hearing to determine if courtroom security needed to be adjusted.  Such a claim falls within the scope of Rule 2.12(A)(5)(c)'s "material witness" ground for disqualification, which is subject to the timeliness requirement.

And fortunately my court reporter wasn't here that day because I think you would have taken her out on your way by. You were so intent on getting away that I barely saw you, it was so fast.

You are a danger. I don't know how [] else to put it. You came to court, you were supposed to see me on something trivial, some kind of status hearing, and the next thing I knew we had an incredibly dangerous situation unfolding.

Flesch asserts these statements "give[] rise to the perception of possible bias or prejudice" under Rule 2.12(A)(1) and 2.12(C).

¶32 We rejected in *Dunsmore* the defendant's argument that the presiding judge's failure to offer him the opportunity to speak at sentencing, combined with the fact that the sentence imposed was greater than both the plea agreement and PSI recommendation, "could be construed as evidence of bias." *Dunsmore*, ¶ 19. We concluded that Dunsmore's argument could not be interpreted—nor did it appear to be intended—as a claim of actual bias or prejudice. *Dunsmore*, ¶ 19. Flesch makes a similarly weak argument on bias and prejudice. He suggests that Judge Harada's involvement raises "possible" bias or prejudice, but he concedes that Judge Harada's statements "do not definitively show bias or prejudice." At most, the Judge's comments reflect her personal knowledge of facts in the underlying proceeding, but Flesch does not claim that those facts were "in dispute" in the attempted escape case or that she gained such knowledge outside the legal proceeding. *See* Rule 2.12(A)(1), *Strang*, ¶ 26. We conclude that Flesch's disqualification claim does not fall within the bias or prejudice exception to the timeliness requirement. Flesch did not preserve his disqualification claim.

**CONCLUSION**

¶33     We affirm the District Court's denial of Flesch's motion to dismiss and his conviction for attempted escape.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE